And the first is number 20-2950, Farooq vs. Attorney General, Mr. Burnett and I'm sorry. Rachel Rosenberg. Rachel Rosenberg, okay, instead of Mr. I'm not going to be able to pronounce his name correctly. Rachel Rosenberg. And you're from the Deckard firm? Yes. Okay, thank you. And Ms. Kniffen? Yes, that's correct. Whenever you're ready, Mr. Burnett. My name is Rachel Rosenberg and I'd just like to introduce Mr. Jacob Burnett, who will be our next petitioner and was admitted in this case under Third Circuit local appellate rule 46.3. And this is when you were at Penn? Yes, correct, Your Honor. Former Penn Law student, now a graduate. Now a graduate, somehow. Yeah, I understand you're in Washington now. Yes, I am, Your Honor. Before I begin, Your Honors, I just wanted to request two minutes for rebuttal. That's fine. It'll probably end up being more anyway. Go ahead. Good morning and may it please the Court. My name is Jacob Burnett and I'm arguing on behalf of the petitioner, Suhail Farooq. This appeal presents two issues. First, this Court has jurisdiction because Mr. Farooq's petition for review is timely and Nasrallah V. Barr does not disturb that finding. Second, the administrative judges below committed reversible error when they misapplied this Court's legal precedent and decided that Mr. Farooq committed a particularly serious crime. The government agrees with both points. Nasrallah, obviously, on another type of issue, and as also perhaps clarified by Johnson, seems to present a pretty significant problem. How do you get around the problem in Nasrallah and in Johnson? Your Honor, Nasrallah itself was very limited, decided a very narrow question of judicial review in terms of the scope of review for factual determinations and CAT proceedings that are coupled with reviews of final orders. Nasrallah itself describes that they are assuming that this is the same case in front of the Court of Appeals. This case presents the fact that Mr. Farooq's consolidated case could not have been final until the administrative judge on remand issued their opinion. He would have been unable to appeal the BIA's decision given the fact that no final order existed at that time. So when was the decision final? It was final on August 26, 2020, when the IJ on remand confirmed and ordered him removed and then issued a CAT withholding of removal. So Nasrallah is not relevant in this case? Your Honor, we don't think it's relevant because the court there and Nasrallah itself describes this exact case in which Justice Cavanaugh describes that in the same Court of Appeals and the same petition, an A petition for review, judges have different reviews that they can engage in for different sorts of relief that claimants have. And in this case particularly, Mr. Farooq had multiple avenues of relief and he would not have been able to appeal the BIA's decision because he still had administrative relief that he had to seek. He either would have had to violate the exhaustion requirement and the consolidation requirement or if the petition was untimely, those are the positions, the petitions, the rules that he would have violated if he had to appeal the BIA order before the CAT determination came down. I understand what you're saying, but it seems if we were to take that path that we're leading with our chin for another case before the Supreme Court, that's my concern. It would seem that there might be two lesser alternative paths. One is just to argue that being told that he didn't need to file was in effect an official misdirection and that might work. Or just file the petition within 30 days of the BIA ruling on removal, request abeyance, and then amend the petition after withholding claims are resolved on remand by the IJ. Your Honor, I agree that Mr. Farooq was officially misled if the court does not wish to engage with the argument that Nasrallah does not disturb his petition being timely. Given the fact that Mr. Farooq has raised in his appeal, we agree with that route if the court wants to go down that route. The issue with the abeyance is that the statute that the INA provides that it is highly limited regarding whether or not claimants can basically parse the avenues for relief in that way. It specifically limits injunctions, very heavily restricts the way that claimants are able to even go about attempting to parse their petition. I'm not saying you have to get cued on the parsing. Just file the petition and just say hold it, you know, abeyance, and amend it later on. In other words, you've covered yourself in terms of the possible claim under Nasrallah and Johnson that you have 30 days, and it's jurisdictional, after the final order of removal in which to file. And this covers that, and you live to fight another day. Yes, Your Honor. Do you think we need to address Nasrallah in light of the misdirection here? Can you please repeat your question? Do you think we need to really address the Nasrallah issue in light of the misdirection, so to speak? I don't, Your Honor. I think that the alternative path that Mr. Frug has, that we have argued that he was officially misled regarding whether, by officially misled, we're not impugning any sort of motive on the IJ. At the time, the IJ was following this court and every circuit court's law, implying that you had to wait until the consolidated case was final. That's obvious. I agree with you. And so we are just, we are arguing that because of that direction, he was told that he could not file at that time. What is your request in the case? We are requesting that the court first exert jurisdiction and secondly vacate and remand the IJ's and the BIA's determination that Mr. Frug committed a particularly serious crime. For reconsideration? For reconsideration in light of this court's precedent and the BIA's precedent outlining the particularly serious crime analysis that the IJ did not engage in. Just the optics. Can't we look at what he did and consider that it was a serious crime, that we're talking about wire fraud and things like that and $90,000 that he was able to extract from overseas? No, Your Honor. The court is not permitted to provide the reasoning for the IJ, the administrative courts below. That's for them on their analysis to undergo. And we believe that there are many ways that the IJ on remand could properly apply this court's precedent, ensuring that step one out of the elements only analysis that Mr. Frug's conviction of wire fraud brings into the ambit of particularly serious crime. And then, as you just suggested, engage with the elements, sorry, engage with the characteristics of the crime that he was convicted of. But that's not for this court to do or even for us to do. It's for the administrative courts to do. That Congress place it in their hands, and this court has deferred to the BIA's test in that regard. I'm sorry. Your specific request is what? To vacate the decision that Mr. Frug committed particularly serious crime and remand it for proper analysis. Remand for what? To decide whether or not he has done a particular serious crime. Proper legal analysis. The proper legal analysis is outlined in both this court's decision and Luziga, as well as the BIA's decision in matter of NAM, which is to first consider only the elements of the crime to determine whether or not it falls with the ambit of particularly serious crimes. And then at that point, if they decide that it doesn't, then analysis stops there. But if they decide that it does, then they can engage with the particular characteristics of the crime at hand for the claimant. But given the facts here, isn't it in essence an academic exercise you're asking us to do? No, Your Honor. Make work for the BIA and the immigration judge? I don't think following the law is making work for the BIA or IJ. I think that in this case, it's apparent in the IJ's opinion that they struggled with this case, she says. But for this analysis, we would have given, we would have granted favorably Mr. Frug's petition for particular serious crime. This is not, you know, this is a close case. And we believe that a particular serious crime analysis that is legal and follows this court's precedent could lead to a different conclusion on remand. We don't believe that as a matter of law, there's no other option, which the fatality exception does not really fit this case. And because Mr. Frug's crime, as you described, the facts of it are different from the facts of every other wire fraud case that has become before the Third Circuit. Mr. Frug, you know, the IJ could analyze again, even if at step one decides that it does fall within the ambit, that informs the analysis at step two. And given the fact that Mr. Frug's case was a close call in the way that the IJ analyzed it, it can make a difference here. And I think that the IJ on remand should have that opportunity given the discretion that the INA demands that they have. Is that the ultimate decision in this case? Was this a serious crime or was it not a serious crime? That is the wire fraud involving, if I remember correctly, $90,000? Yes, Your Honor. The question is whether or not Mr. Frug committed a particularly serious crime. So that is the analysis that was improperly done below, that we are requesting the IJ again, not because of any sort of improper motive, but just because they did not apply this court's legal test. And this court has held time and time again that when an administrative court fails to follow legal precedent, they've acted arbitrarily. And remanding a case so that they can take a look at the case and apply the correct legal test is not in any way futile. Which is what? The correct legal test? The correct legal test is the Lusiga test, the particularly serious crime test. That first elements only, whether or not wire fraud falls within the ambit of a particular serious crime, and then only can they move to step two, analyzing the particular facts of Mr. Frug's case. And the government has appointed or has demonstrated to this court that another BIA decision has decided that wire fraud at step one elements does lead a determination that it falls within the ambit of a particular serious crime. It sounds like a binary decision. It is or is not a serious crime. But doesn't the amount involved have something to do with determining whether it's serious or not? Yes, Your Honor, at the second step it does. But Mr. Frug's amount, again, while it is $90,000, it doesn't, you know, and Lusiga was $1 million. And other wire fraud cases, they are hundreds of thousands of dollars. Not trying to, you know, belittle Mr. Frug's amount that he was convicted of defrauding, I think it's important to understand that the facts of his case are not an open and shut case for the IJ. And the IJ didn't think that it was. The IJ said that but for that determination they could have found that he did not commit a particular serious crime, but for the analysis. I mean, the analysis was wrong. So we think that if there was a correct analysis, even if on remand we concede he might be convicted of a particular serious crime, he is not, as a matter of law, required to be considered to have committed a particular serious crime. As a matter of law, there are two options, as Your Honor has pointed out, and the discretion of the IJ is what will lead to that conclusion. They cannot be bound to require fining Mr. Frug for committing a particular serious crime because the INA particularly vested him with the discretion to do so. This is not a per se violation. I'm a per se particular serious crime. This is a discretionary particular serious crime. Before you sit down, let me just go back to the jurisdictional issue. Your primary suggestion is that, is what? That as well as irrelevant, we should just ignore it? Or is it that there was an official misleading by the IJ? Or third, the suggestion that I had made, just file a petition timely, ask the appellate court to hold it in abeyance and then go back and do your thing? Respectfully, Your Honor, we request that any of those routes that lead to Mr. Frug's petition Which is your preferred route? Well, we stand by our briefs that Nasrallah does not disturb this court's precedent, nor does it abrogate every circuit's precedent regarding timeliness of consolidated cases for review. And for the reasons, may I please finish? Thank you, Your Honor. For the reasons stated in our brief, as well as the government's brief, we don't believe Nasrallah v. Barr disturbs the finding of timeliness in this case, otherwise leading to similarly absurd results. But if this court is not so persuaded, we believe that this court, following Gonzalo, there is both the Scott case that I cited in the brief, as well as Gonzalo's Laura v. AG, finding that a facial untimeliness can be waived when officially misled. And I do believe that that is a... It does seem that another circuit, you say no circuit is decided the other way, but the second circuit in a case called Bhakthibhai, B-H-A-K-T-I-B-H-A-I-Patel, at 32 F. 4th, 180, does go the other way. May I respond, Your Honor? Sure, you can sure begin. Yeah. I would submit that that case is very different from the case in front of you, given the fact that that was an illegal reentry case involving someone who was not only finally ordered once, but multiple times, and on reentry was submitted for a statutory withholding. It was considered a statutory holding removal order only, or sorry, hearing only. And that is factually incredibly different from Mr. Farouk's case, where he was not, for one, going through a reentry process and undergoing a statutory withholding only hearing. In this case, he did exactly what he was entitled to do via the INA, to have a consolidated case for all avenues of relief to exhaust in the administrative courts before petitioning this court for review. So I don't think that the factual similarities involving the statutory withholding only hearing in light of reentry is similar to a claimant going through the regular avenues for relief that the INA affords them. The problem with jurisdiction is, back to Judge Fuente's point on the merits, it's binary. Either you have jurisdiction or you ain't got it. And if you ain't got it, then you're out of luck. And if we say, as you suggest, and I think also as the government suggests, that Nisrallah is not relevant, I think we're teeing that up as an issue to be decided by the Supreme Court. Even if we were to say that there was official misleading, that assumes that there was a late filing and otherwise there would not be jurisdiction. And the question is, can an official misleading, now you've teed up, can an official misleading by an IJ override the statutory requirement of an appeal within 30 days of a final order of removal? And the suggestion I made to you, which is take the appeal timely, ask for an abeyance, and then send it back, is obviously a more cautious approach, but it certainly makes it clear that you live to fight another day without another fight as to jurisdiction. Yes, Your Honor, and we submit that the stay in abeyance method that you've proffered is, if it's enough for Mr. Farouk's petition to be timely, I think that it's persuasive enough for our side. But that's not what happened here, of course. It's not what happened here because, Mr. Farouk, I think the stay in abeyance, while very common in AEDPA cases, the INA heavily restricts both the injunctions that someone could seek as well as other sort of, what's it called, like, again, parsing of the consolidated petition. So while in this case Mr. Farouk was unable to seek a stay in abeyance to seek review of the IAJ's opinion on remand as well as the BIA's opinion, I do think that the most direct avenue for relief for Mr. Farouk for his petition to be timely is that he was misled. I think that that is both what justice requires as well as what the INA and this Court's precedent permit. And having been misled, what is your request? So our request is that, given the fact that the I— if this Court is unwilling to assume that Nasrallah Bibar does not disturb the finding that it is timely, that Mr. Farouk, when he was on remand, was instructed by the immigration judge not to appeal the BIA's decision. And so he was instructed not to appeal by an immigration official, a judge, and so he did not and instead waited until his consolidated case became final. And we don't think that it is, based on this Court's precedent, that isn't an avenue for him to not— for his petition not to be timely. All right. Thank you very much. We'll get you back on record. Thank you, Your Honor. Ms. Nichol. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Margo Niffin for the United States Attorney General. Your Honors, this case presents two distinct issues. First, whether there is jurisdiction, the Court has jurisdiction over this petition for review. And second, if the Court does have jurisdiction, whether remanding for the agency's further consideration of its particularly serious crime determination would be futile. Could you—obviously we've spent a lot of time on jurisdiction. Why don't you give me the government's view as to what you think we should do? Well, Your Honors, this Court has long held that pursuant to 1252B1, an agency decision is final when all appealable issues have been resolved. But Nasrallah kind of ignores B9, which is, you know, the so-called consolidation or zipper clause. And I just—I'm not—I'm unsure how to get around that. Well, first I would point the Court's attention to Johnson, this Court's precedent in Johnson. In Johnson, this Court held that when the board remands a case to the immigration judge, unless it expressly retains jurisdiction and limits the scope of review for the immigration judge, the immigration judge can consider any additional issues on remand. So given Johnson, given that the immigration judge could have considered additional issues on remand in addition to Kat, in conjunction with this Court's finality case law, Baker and Yusupov, this Court should conclude that Mr. Farouk's removal order was not final until the immigration judge issued her second decision on Kat. Do we even need to go down that road? I mean, wouldn't a clearer path, so to speak, would be to not engage with Nasrallah on these facts and lean on the fact that the petitioner was told by the immigration judge, don't appeal? As we explained in briefing, at the time that the immigration judge made that statement, it was not an official misleading because that statement was in line with this Court's case law, specifically Baker, Yusupov, Johnson, and so there was no official misleading. All right, so let's not call it misleading because he complied with the instructions or the directive not to appeal. Well, I would note that in arguing, in making that argument, Mr. Farouk relies on dicta and an unpublished Third Circuit decision. The Court has never held that there is an official misleading exception to the jurisdiction requirement. In addition, that aspect, that portion of the transcript is not a part of the administrative record in this case. And so the Court does not have jurisdiction to even consider the immigration judge's alleged statement under 1252b-4. And so given that the Court doesn't have jurisdiction to consider the immigration judge's statement and that there is no Third Circuit president supporting a conclusion that there is an official misrepresentation exception to the jurisdiction requirement. Suppose we wrote one. Suppose we wrote a presidential opinion recognizing that exception. Well, the Court does not even need to reach that question, given, again, that under this Court's case law, Mr. Farouk's order of removal was not final until the immigration judge issued her second order, again, under Baker, Yusupov, Johnson. So the Court doesn't even need to reach the question of Nasrallah. And again, Nasrallah answered only a narrow question. The Supreme Court explicitly stated it was only answering the question of the scope of review under the criminal alien bar, 1252a-2c. It was not answering the question here, which is the timeliness of the petition under 1252b-1. And notably, if we look at the Court's analysis in Nasrallah, I think that that supports a conclusion that Mr. Farouk here correctly filed his petition after the immigration judge's second CAF decision. The Court points to two provisions, specifically the jurisdictional provision of FARA at 2242d, under which courts do not have jurisdiction over CAT orders unless they're filed as a part of review of a final order of removal. The dissent in Nasrallah explained that this means that a final order of removal is necessary for the Court's review of a CAT order. In addition, it pointed to 1252b-9, the zipper clause, which states that all issues arising out of removal proceedings should be reviewed together, consolidated. This Court has described the 1252b-9 as a channeling provision. And so given that the Supreme Court in Nasrallah pointed to these provisions, which show that Congress expressed its intent that CAT orders be reviewed alongside final orders of removal, even though they're not the same as final orders of removal, this analysis supports a conclusion that the Court has jurisdiction in Mr. Farouk's case. You mentioned a Johnson case of our circuit as supporting your position. The Johnson case that I'm worried about is the one at the Supreme Court. I suspect that if this were to go up, this issue, that the Supreme Court would say you don't have jurisdiction. And even an official misleading means that once jurisdiction is gone, 30 days after removal, if you haven't filed a petition for review, you lose. And so what I was trying to suggest is a way around that until at least we can get some clarification from the Supreme Court, some further clarification. Is there anything wrong with that? Well, again, first off, this case doesn't present the question. Since the immigration judge granted Mr. Farouk's CAT claim, there is no question of how the court, because there's no appeal from the CAT claim, there's no question of how the court would then review CAT, because that's not an issue in this case. I'm almost thinking that CAT is off the table in terms of decision of the question. He's appealing, what, his withholding of removal, right? Or he's not appealing, petitioning for review, is withholding of removal? Yes. And the question is, do we have jurisdiction over that? I'm not, I don't necessarily have a question with respect to CAT, because Nesrolla basically says the CAT is a separate consideration outside of 1252 B-9. And I think that the abeyance is one possible avenue. However, I think it would lead to unnecessary use of judicial resources. In this case, the time between the board's decision and the IJ's decision was only about a month. However, in other cases, it could be years. And, again, looking back to this court's precedent in Johnson, if the immigration judge were to consider other issues on remand, or if just for CAT and there was a new hearing, it could potentially take a long time. And so that would mean that a petition would have to sit on this court's docket, stayed until the agency resolved the remaining issues. It could also lead to potential confusion if the court were to consider asylum and withholding of removal prior to CAT. There could be some confusion, given that it's the same record, and since the issues are connected between asylum, withholding, and CAT. So, again, it could lead to an unnecessary use of the court's resources. And, again, I don't think the court needs to reach the question, given that Nesrolla answered only the narrow question of the criminal alien bar, the scope of review of the criminal alien bar, and given, under Johnson, that the board did not limit the scope of its remand to the immigration judge. And so even though it remanded, it stated it remanded for the immigration judge's consideration, additional fact-finding, and consideration of CAT, there were the potential for issues disconnected from CAT. The immigration judge could have considered asylum, could have considered withholding of removal. And so, under Johnson, this court should find that until the immigration judge reached her final decision, Mr. Farooq's order of removal was not final. If we follow what you suggest, isn't there a significant chance, I don't know what the percentage is, that the Supreme Court is going to say, we told you once, we told you twice, that it's 30 days after a final order of removal. That's it. You filed on the 40th day. It's over. There's no jurisdiction. That's the concern. And all I'm trying to do is make it so that we avoid that concern completely. And maybe it's the overly cautious approach, but I don't know. You tell me what gives him 100% chance of, or people in his position, 100% chance of having their full claim heard. In this case, withholding of removal. The clearest way is that to find under this court's precedent that his order of removal was not final because the Supreme Court in Nasrallah indicated that it was only answering the narrow question of the meaning of final order of removal in the criminal alien bar, which is a separate provision from the timeliness provision of B1. And again, I think looking at B1 in the context of the whole statute, in the context of A4, which is under which Congress indicated that CAT orders should be reviewed by the courts of appeals, and in addition, B9, which states that all issues arising out of removal proceedings should be consolidated, and the FAR itself. The argument in Nasrallah was that B9 superseded, but in fact it didn't. In Nasrallah, the Supreme Court explained that a CAT order is not the same as a final order of removal, but these provisions, in the context of these provisions, it shows that there was an assumption that CAT orders would be considered alongside final orders of removal. And notably, there's no provision in 1252 that addresses a timeliness provision for CAT orders reviewed outside of final orders of removal. If the order of removal is not final, as you said a moment ago, what's the next step in this case? So if the court finds that it has jurisdiction in this case? No, if it's not final. If it's not final, if Mr. Frug's petition was untimely, the court would not have jurisdiction. And should dismiss the petition for lack of jurisdiction. If the order of removal is not final, we have to dismiss for lack of jurisdiction? That's correct, because if the removal order was final at the time of the board's order, dismissing the appeal of asylum and withholding, Mr. Frug's petition would have been untimely filed, because he filed his petition from the immigration judge's subsequent CAT decision. And so in this case, the court would not have jurisdiction over the petition. How does that affect him? He would not have judicial review of his applications for asylum and withholding of removal. And? Which contravenes the presumption in favor. I'm just wondering, how does that affect him as an individual? He would have a final order of removal. I see. Well, he will have a grant of withholding, excuse me. He would have a grant of CAT protection, excuse me. He is only filing his petition challenging the denial of withholding of removal. And so he has, in this case, he has a grant of CAT protection, excuse me. On this second issue, which we haven't gotten to, which is the futility of sending this back, relying on the so-called remand futility doctrine, how do you get around Mozega? So in matter of FRA, the board held in a published decision that conspiracy to commit wire fraud, that the elements of that conviction bring it within the ambit of a particularly serious crime under Mozega. Given that this precedent would be binding on Mr. Farooq if the court were to remand the case, the only possible disposition as a matter of law is that the elements of his underlying wire fraud conviction would also fall within the particularly serious crime ambit. Since that's the only possible disposition as a matter of law, remanding for the board to say that would be an exercise in futility. All right. Any further questions? Thank you. Thank you very much. Thank you so much. May it please the court. I want to emphasize that nothing in Nasrallah indicates that CAT orders are not consolidated with an entire claimant's case. The court, through Justice Kavanaugh, consistently refers to everything in the opinion as being in the same case in front of the same court of appeals. He also describes the issuance of when a court of appeals reviews a sentence and a conviction, and the scope of judicial review of the sentence is going to be different than the scope of judicial review for the conviction. Just like that here, we are asking that the same final order that was issued by the BIA in terms of the statutory withholding is being reviewed via the final order removal that the IJ on remand issued. In this case, taking the view that Mr. Farooq's petition is untimely means that he then had two final orders of removal that he could petition this court for. He would have had to have a final removal when the BIA affirmed the IJ on all respects except for as to the CAT determination and the CAT determination on remand that was issued alongside with the final order as removal. As the government suggested, a CAT order does not exist without a final order removal. In this case, that means that Mr. Farooq, if his petition was untimely, had two final orders of removal, both of which are appealable in front of this court, both of which would have violated this court and the INA's provision against exhaustion and consolidation. And because of that, I don't think Nasrallah disturbs the timing of this petition. I'm just reading from Nasrallah here. This is a quote. Even though CAT orders are not the same as final orders of removal, a question remains. Do CAT orders merge into final orders of removal in the same way as, say, an administrative immigration judge's evidentiary rulings merge into final orders of removal? The answer is no. For purposes of this statute, final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal, close quote. May I respond, Your Honor? Sure, absolutely. Yes, Your Honor. Nasrallah does hold, as the government and we concede, that the final order is not the same thing in terms of the CAT order and does not merge into a final order for purposes of the jurisdictional scope of review that the court can undergo. But what it does not hold is that there will be multiple final orders of removal that a claimant would face and would have to appeal them piecemeal in front of the Court of Appeals in violation of the INA's exhaustion and consolidation requirement. And then if I may conclude as well. The Court specifically discussed the consolidation under B-9 and said it's a different animal here, obviously, with respect to CAT. I just see all the arrows pointing the other way from what you and the government are suggesting. May I respond? Thank you. In terms of the consolidation requirement, I still think that that is not – we're looking at an entire statute. In the entire statute, they are interlocking jurisdictional requirements, including not only the consolidation requirement that you have pulled out of Nasrallah, but also an exhaustion requirement, and including the fact that there could only be a petition for review. There's nothing about petition for review and the INA that suggests multiple petitions for review or even multiple final orders. The interlocking description of the INA and requirement, and again, from multiple examples from Nasrallah, indicate that there should be a petition for review in front of the Court of Appeals. And while they might engage with different scope of jurisdiction on reviews of certain factual and legal findings, that is still a single petition for review in front of the Court of Appeals. And again, I suggest that, contrary to the government, that if the court is unwilling to do that, I think that Mr. Farooq – I know Mr. Farooq was misled from the IJ requiring his timeliness of appealing. And the reason why, as the – I think that you heard the government say that once you – if you don't have jurisdiction and the official misleading is not in the record, you don't have jurisdiction. In fact, even if it is in the record, you don't have jurisdiction. We disagree. This court has held time – there are decisions in which this court has held the exact opposite. So either Mr. Farooq – the reason why – in the record, we have cited to Mr. Farooq's petition involving when he did signal to this court that he was officially misled. The transcript isn't there, but he has evidence that he was officially misled in terms of the appeal and the joint appendix. But the reason why there's also necessarily not a transcript is because Mr. Farooq did not appeal the final order of removal with the CAT order on remand because he was granted it and the government didn't appeal the decision of the IJ on remand either. The posture of this case is such that Mr. Farooq's – Mr. Farooq could have only – only given the things that he was told, given the case law at the time, was only able to petition this court once the IJ on remand finished their analysis. Thank you very much. Thank you very much for taking this case. Thank you, Deckard, for your aid in connection with this very interesting and important immigration issue. I would – I also thank the government for its comments today. I would ask that a transcript be prepared of this oral argument, and the government – would you be willing to pick up the cost for that? Okay, thank you. Again, it's a pleasure having you here. May this not be your – just your first argument, may it be the first of many. Come back often. You will acquit yourself very, very well. Thank you. Thank you, Your Honors. We'll call our second case of this morning, number 20-16.